**In re Raymond P. KATZEN, Debtor.**

**AMERICAN HOME ASSURANCE CO., et al., d/b/a American International Group, Plaintiffs,**

**v.**

**Raymond P. KATZEN, Defendant.**

**Bankruptcy No. 83–952–JG. Adv. No. A83–838.**

United States Bankruptcy Court, D. Massachusetts.

March 20, 1985.

Stephen Shamban, Braintree, Mass., for plaintiffs.

Henry Boroff, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

### Procedural Statement

The Complaint of the Plaintiffs (hereinafter referred to as "AIG") seeks a determination that an alleged obligation of the debtor Raymond Katzen (hereinafter referred to as "the debtor" or "Katzen") for unpaid insurance premiums totalling approximately $78,000 is nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4) in that his failure to remit premiums constituted fraud and defalcation while acting in a fiduciary capacity, larceny, or embezzlement.[1] The debtor filed an Answer which admits failing to remit premiums, but asserts, as an affirmative defense, that it was impossible for him to remit the premiums as the bank account containing the funds had been attached by creditors of his insurance agency. A trial was held and the parties submitted Memoranda of Law. Based upon the testimony, documentary evidence, and a review of applicable law, the Court issues the following Findings of Fact and Conclusions of Law in accordance with Bankruptcy Rule 7052.

### Findings of Fact

The facts in this case are relatively undisputed. From 1973 to 1980 the debtor was a principal in an insurance agency known as ABS Insurance Agency ("ABS"). ABS and Katzen were duly licensed Massachusetts insurance agents and brokers. ABS became a Massachusetts corporation in 1980. The debtor was a 50% shareholder as well as an executive officer. In 1982 the agency was in financial difficulty; it owed secured debt of over $400,000 to Security National Bank and Essexbank. Katzen had personally guaranteed these debts.

During the summer of 1982 ABS acquired a large new account to provide insurance to Empire of California, Inc. In September 1982 Katzen arranged for various types of insurance for Empire with the Plaintiff insurance companies and binders were issued. On September 24, 1982, Katzen, in his capacity as Treasurer, executed a "Premium Finance Agreement" (Exhibit 2) with AFCO, a premium finance lender, enabling Empire to obtain the $222,669 necessary to finance the balance of the cost of insurance after a $74,222 down payment. Total premiums according to the finance agreement were $296,891. The agreement listed the agent as "ABS Insurance Company, Inc." AFCO hand delivered a check in the amount of $150,012 on October 14, 1982 representing partial payment of the financed premiums.

Because of the agency's financial difficulties, prior to receipt of the AFCO funds, ABS had opened a new checking account at the Century North Shore Bank for depositing the AFCO check to attempt to shield the funds from setoff by secured creditor banks. Katzen deposited the $150,012 into

---

**1.** The other portion of the Plaintiff's Complaint alleging concealment of assets was dismissed by agreement of the parties.

the Century account on October 14, 1982. This was the only deposit to this account other than the $500 opening deposit. Katzen wrote two checks on the Century account: a check dated October 20, 1982 in the sum of $64,195.74 for premiums unrelated to the AFCO/Empire transaction, and, a check dated November 9, 1982 payable to ABS in the sum of $7635.50 which was used for office expenses and payroll. Deposited as of November 18, 1982 were funds totaling $78,680.76. On this date, a secured creditor of ABS, Essexbank, obtained an ex parte trustee process attachment of ABS's Century bank account as well as ABS's accounts in other banks in connection with its action against ABS, Katzen and Fleet (Katzen's partner). The Bank's Answer acknowledged funds on hand in the amount of $78,680.76, and the ABS account was closed on March 13, 1983. The Superior Court entered default judgment against the three defendants, including Katzen. One week later the three defendants, including Katzen, entered into an agreement confirming the judgment and waiving an appeal. Thereafter, Essexbank levied on its attachment of the Century account. In February 1983, Security National Bank foreclosed on its security interest on the assets of ABS and the agency was sold. AIG filed an action against ABS, the debtor, Fleet, Security National Bank, and Essexbank in Essex Superior Court seeking the return of funds on deposit at Century.

On June 29, 1983, the debtor filed a voluntary chapter 7 petition. In this adversary proceeding the plaintiffs seek to charge the debtor with fraud or defalcation while acting in a fiduciary capacity, and embezzelement or larceny in failing to remit the Empire premiums to plaintiffs, and thus seek to except the debt from discharge under § 523(a)(4). The plaintiffs argue that ABS and Katzen, as licensed insurance agents, were fiduciaries to the plaintiffs, that under state law they held the premium funds in trust for the plaintiffs, and that the use of the premium funds for purposes other than payment to the insurer was fraud and defalcation while

acting in a fiduciary capacity. The debtor submits that there was no fiduciary or trust relationship between the individual debtor and the plaintiff insurance companies, even though the ABS Insurance Agency, Inc. may have been a fiduciary to the insurance companies; that the evidence did not sustain a finding of larceny; and that the plaintiffs did not sustain their burden of proving that the debtor intentionally failed to remit premiums where the funds were attached and levied by a third party creditor.

*Conclusions of Law*

▮ I find that the liability of the debtor to the plaintiffs is not a liability for "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny", as required by 11 U.S.C. § 523(a)(4). Section 523(a)(4) of the Bankruptcy Code excepts from an individual debtor's discharge and debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;" *11 U.S.C. § 523(a)(4)* (1984 Supp.).

▮ For the purposes of this section, the term "fiduciary" is limited to traditional trust relationships, such as express trusts, not trusts implied in law or imposed by statute. *See L. King, 3 Collier on Bankruptcy,* ¶ 523.14[1][c], at 523–99 (15th ed. Supp.1983). A principal-agent relationship does not fall within the meaning of "fiduciary" under this section. *In Re Ridgway,* 24 B.R. 780, 785 (Bankr.D.Kan. 1982). Even though the Massachusetts statute, M.G.L. c. 175, refers to the insurance company/insurance broker relationships as a trust, the statute does not give rise to fiduciary relationship between the company and agent. *See In Re Koritz,* 2 B.R. 408, 415–16 (Bankr.D.Mass.1979). Rather, in determining whether an insurance agent is a fiduciary to an insurance company for premiums held, the dealings between the parties must be examined to determine whether there was a duty to segregate and account for funds. *See Matter of Storms,* 28 B.R. 761, 764 (Bankr.E.D. N.C.1983). An insurance agent is not a

fiduciary to the company with respect to premiums held where premiums are paid to the agent subject only to the later obligation to repay the insurance company its share. *See In Re Morris*, 37 B.R. 682, 683 (Bankr.D.Ore.1983). The agent's personal liability for his corporation's failure to remit premiums does not impose a fiduciary duty on the individual in the absence of a trust agreement or dealings indicating that a fiduciary relationship was intended. *See In Re Ridgway*, 24 B.R. 780, 783 (Bankr.D. Kan.1982). The typical relationship between insurance agent and insurance company in connection with premiums held is that of debtor and creditor, in the absence of evidence to support a contrary intent. *See In Re Koritz*, 2 B.R. 408, 415–16 (Bankr.D.Mass.1979).

The cases relied upon by the plaintiffs do not change my view because they turn on interpretation of agreements between the broker and company which explicitly created express trusts. *See e.g., Matter of Whitlock*, 449 F.Supp. 1383 (W.D.Mo.1978); *Morgan v. American Fidelity Fire Insurance Co.*, 210 F.2d 53 (8th Cir.1954).

In the present case, I find no fiduciary relationship between the individual debtor and the plaintiffs. No agreement creating such a relationship was offered. The course of dealings indicates a typical insurance agent/carrier/customer relationship where the agent would receive premiums, deposit them, and merely had the duty to pay the company its share. ABS & Katzen had no contractual or implied duty to segregate or account for premiums, and there was no prohibition against using them. This was nothing more than a debtor/creditor relationship.

■ Furthermore, I find that the evidence does not support a finding of either fraud or defalcation. Defalcation requires a showing of knowing misappropriation. *In Re Koritz*, 2 B.R. 408, 417 (Bankr.D. Mass.1979). Fraud within the meaning of this section requires proof of positive, intentional misrepresentation or falsehood. *See L. King, 3 Collier on Bankruptcy*, ¶ 523.14[1][a], at 523–95 (15th ed. Supp.

1983). In this case, the debtor's use of the funds collected from AFCO to finance premiums did not rise to the level of misappropriation or obtaining money by misrepresentation. The insurance agency had the right to deposit the funds, take its commission and pay expenses subject to the obligation to remit the company its share of the premiums. There was evidence that despite the agency's use of the funds for payroll, there were sufficient funds on hand to pay plaintiffs their proportionate share of the premiums until the attachment of the account by the agency's secured creditor. That the account was subsequently levied because Katzen agreed to judgment for the secured creditor does not make him guilty of misappropriation or misrepresentation, because there were no legitimate defenses to the secured party's lawsuit. The evidence does not warrant a finding of fraud or defalcation.

■ The plaintiffs also claim that the debt is excepted from discharge because the liability resulted from Katzen's larceny or embezzlement. M.G.L. ch. 175 § 176 provides that an insurance agent's failure to pay over premiums to the company after written demand shall be *prima facie* evidence of larceny. I reject the plaintiff's suggestion that this statute makes Katzen's debt one for larceny. "A state's legislation that certain conduct is criminal is not determinative of a dischargeability question in bankruptcy." *Matter of Storms*, 28 B.R. 761, 765 (Bankr.E.D.N.C. 1983). Moreover, the statute merely establishes a *prima facie* case of larceny, not a conclusive presumption. In this case, the plaintiff did not prove that a written demand was made, a necessary element of the statutory proof of *prima facie* effect. Accordingly, the plaintiffs did not sustain their burden of proving the larceny exception to discharge.

■ Finally, the plaintiffs appear to have waived their claim of embezzlement as it was not mentioned in their closing argument, requests for findings, or brief. In any event, where an insurance agent lawfully receives premiums, and his use of

them is not restricted by agreement, his obligation being merely to repay the company, a finding of embezzlement for failure to remit is not warranted. *See Matter of Storms*, 28 B.R. 761, 765 (Bankr.E.D.N.C. 1983). In the present case, the plaintiffs offered no evidence from which the Court could find that Katzen committed any wrongdoing in failing to payover the premium funds.

Accordingly, judgment shall enter for the defendant in this adversary proceeding.