In the Matter of Harold Britt
McCRANEY, Debtor.

HARTFORD ACCIDENT & INDEMNITY
COMPANY, a Connecticut Corpora-
tion, & Hartford Fire Insurance Com-
pany, a Connecticut Corporation,
Plaintiffs,

v.

Harold Britt McCRANEY, Defendant.

Bankruptcy No. 85–5498.
Adv. No. 85–0752.

United States Bankruptcy Court,
N.D. Alabama, S.D.

July 11, 1986.

Alan D. Levine, Birmingham, Ala. for
debtor/defendant.

Richard K. Mauk, Birmingham, Ala. for
plaintiffs.

M. Charles Sterne, Birmingham, Ala.,
trustee.

OPINION

CLIFFORD FULFORD, Bankruptcy
Judge.

Hartford Accident & Indemnity Company
and Hartford Fire Insurance Company
(hereinafter "Hartford") seek to except
their judgment for an agency balance of
$22,425.11 against the Debtor, Harold Britt
McCraney, from his discharge under Sec-
tion 523(a)(4) of the Bankruptcy Code.
That section provides:

> A discharge ... does not discharge an
> individual debtor from any debt—
>
> ...
>
> (4) for fraud or defalcation while act-
> ing in a fiduciary capacity, embezzle-
> ment, or larceny[.]

Hartford acknowledges that its contract
with McCraney did not create a fiduciary
relationship.[1] Hartford contends that
McCraney was acting in a fiduciary capaci-
ty solely by reason of Section 27–7–36,
*Code of Ala.* 1975, which reads:

> (a) All premiums, return premiums or
> other funds belonging to others received
> by an agent, broker or solicitor in trans-
> actions under his license shall be trust
> funds so received by the licensee in a
> fiduciary capacity, and the licensee in the
> applicable regular course of business
> shall account for and pay the same to the
> insurer, insured, agent, broker or other
> person entitled thereto.
>
> (b) Any agent, broker or solicitor who,
> not being lawfully entitled thereto, di-
> verts or appropriates such funds, or any
> portion thereof, to his own use shall,
> upon conviction, be guilty of embezzle-
> ment and shall be punished as provided
> by law as if he had stolen such funds.
> (Acts 1971, No. 407, p. 707, 148.)

Was McCraney acting in a fiduciary ca-
pacity for Hartford? If so, there could be

---

1. The contract was not placed in evidence by
either party. From the representations of coun-
sel, the contract provided for periodic account-
ing in which McCraney was debited with premi-
ums received from insureds on Hartford poli-
cies he issued, and credited with commissions
and unearned premiums on cancelled policies.

excepted from his discharge, under the broader term "defalcation", monies he received and failed to remit to Hartford. This is the thrust of Hartford's contention, relying on cases such as *In re Interstate Agency, Inc.*, 760 F.2d 121 (6th Cir.1985); *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937); and *In re Cairone*, 12 B.R. 60 (Bkrtcy.R.I.1981). If McCraney was not acting in a fiduciary capacity for Hartford, the claimed exception to his discharge would have to be based on his "embezzlement" or "larceny" which are not dependent on fiduciary capacity as "fraud or defalcation" are in the context of Section 523(a)(4).[2] It is therefore important to determine at the outset whether McCraney was acting in a "fiduciary capacity" for Hartford within the meaning of Section 523(a)(4).

All questions of dischargeability of debts in bankruptcy proceedings are federal law questions. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Less clear is whether federal law or state law determines the underlying issues of a dischargeability issue under Section 523(a)(4).

The Supreme Court appeared to answer this question in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), by applying federal law. Some Courts of Appeals circumvent *Davis* and apply state law directly, but the majority of them apply *Davis* in connection with a non-*Davis* federal standards analysis of state law.[3]

---

2. Hartford does not contend, and the evidence does not support, that its judgment should be excepted from discharge because of "fraud" under Section 523(a)(4) or "actual fraud" by McCraney under Section 523(a)(2)(A) of the Bankruptcy Code. There was certainly no "larceny". Hartford's attorney disclaimed in oral argument any insistence on "embezzlement" or reliance on any moral dereliction by McCraney. He viewed McCraney's failure to pay the account balance as a "defalcation" without the opprobrium that attaches to fraud, embezzlement or willful misappropriation.

3. **SECOND CIRCUIT**: Applying *Davis* and additional federal standards to a non-state statute case, a corporate officer who neither diverted specific corporate funds expressly required to be segregated nor personally benefited from the use of general corporate funds, did not commit fraud in a fiduciary capacity within the meaning of old Bankruptcy Act Section 17(a)(4), predecessor of Bankruptcy Code Section 523(a)(4). *Matter of Banister*, 737 F.2d 225 (2nd Cir.1984), *cert. denied*, 469 U.S. 1035, 105 S.Ct. 509, 83 L.Ed.2d 400 (1984);

**FIFTH CIRCUIT**: A Louisiana statute made misappropriation of funds by a contractor a crime. Applying *Davis* and additional federal standards, it was held that a contractor could not be a trustee where the funds misapplied did not exist until the misappropriation occurred. *Matter of Angelle*, 610 F.2d 1335 (5th Cir.1980). Applying federal standards without applying *Davis*, an Oklahoma lien statute which clearly defined the trust *res* and charged the trustee with affirmative duties in applying the trust funds was held to create a trust for the purposes of Bankruptcy Act Section 17(a)(4). *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980);

**SIXTH CIRCUIT**: Applying Michigan law, debts of an independent insurance agent who failed to remit collected premiums to its insur-

ance principal were held nondischargeable on the basis of defalcation committed in a fiduciary capacity. *In re Interstate Agency, Inc.*, 760 F.2d 121 (6th Cir.1985). Applying *Davis* and the additional federal standards to a Michigan statute, a contractor who used construction funds for materials in a nonproject related business was held to have breached his fiduciary duty. *In re Johnson*, 691 F.2d 249 (6th Cir.1982);

**SEVENTH CIRCUIT**: Applying federal standards to a Wisconsin statute without applying *Davis*, it was held that a subcontractor could not use funds paid by a general contractor except in the target project. *Matter of Thomas*, 729 F.2d 502 (7th Cir.1984);

**EIGHTH CIRCUIT**: Applying *Davis* and additional federal standards to a Nevada statute, it was held that old Bankruptcy Act Section 17(a)(4) does not operate in the absence of an express trust, and that where the statute does not create an express trust, there is no fiduciary relationship. *Matter of Dloogoff*, 600 F.2d 166 (8th Cir.1979);

**NINTH CIRCUIT**: Applying *Davis* and additional federal standards to a California statute, it was held that where the state court construes a statute to make partners fiduciaries within Section 523(a)(4), a trust results. *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir.1986). Applying federal standards without applying *Davis*, it was held that a California statute that did not define a *res* or spell out fiduciary duties, did not create a fiduciary relationship in an owner/contractor/subcontractor context. *In re Pedrazzini*, 644 F.2d 756 (9th Cir.1981). Applying *Davis* and additional federal standards, an Oregon statute which may impose a trusteeship on an employee who misappropriates money that he is contractually obligated to deduct, was held not to create a fiduciary relationship for purposes of old Bankruptcy Act Section 17(a)(4) where there

The Eleventh Circuit sides with the majority. *Matter of Cross*, 666 F.2d 873 (5th Cir.1982) (Unit B). *Cross* relies on *Matter of Angelle*, 610 F.2d 1335 (5th Cir.1980), which explains why both state and federal law should be consulted. "We think it essential to clarify the precise role of state law.... To begin with, the scope of the concept fiduciary under Section 17(a)(4) is a question of federal law." *Id.* 1341.[4] "On the other hand, state law takes on importance in determining when a trust exists." *Id.* "We also believe that state law may play importance in determining whether a specific case involves an express trust." *Id.* Footnote omitted.

Under *Davis v. Aetna* and its progeny, a fiduciary relationship exists for purposes of the Bankruptcy Code if there is a technical trust, not one which the law implies from a contract, *Chapman v. Forsyth*, 2 How. 189, 195 (1844); and it must have existed prior to the act creating the debt and without reference to that act. *Upshur v. Briscoe*, 138 U.S. 365, 378, 11 S.Ct. 313, 317–18, 34 L.Ed. 931 (1890); and *Davis v. Aetna*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934).

Under *Cross* and the majority procedure, where state statutes impose fiduciary trusts, additional factors are considered. Does the statute require the individual to maintain a segregated account? *See, Matter of Angelle*, 610 F.2d 1335, 1340 (5th Cir.1980); *Matter of Cross*, 666 F.2d 873, 881 (5th Cir.1982) (Unit B); *Matter of Bannister*, 737 F.2d 225, 229 (2nd Cir.1984), *cert. denied*, 469 U.S. 1035, 105 S.Ct. 509, 83 L.Ed.2d 400 (1984); *In re Katzen*, 47 B.R. 738 (Bkrtcy.D.Mass.1985). Does the statute create the basic elements of a trust? Is a *res* defined? Are fiduciary duties spelled out? *In re Pedrazzini*, 644 F.2d 756, 759 (9th Cir.1981); and *In re Lipke*, 54 B.R. 704 (Bkrtcy.W.D.Wis.1985).

Given these requirements, Hartford correctly argues that in some cases the relationship between an insurance agent and its principal is a fiduciary one.[5] In these cases, however, even if the courts apply *Davis*, they do not follow the majority and consider the additional factors which this Court believes should be considered. The task then becomes one with two parts.

First, *Davis* requires a trust which existed prior to the acts complained of and without reference to that act. While the Alabama statute may create a trust prior to an alleged violation of that trust, it does not create that trust without reference to

was no definite subject of the trust or a certain object or *res*. *In re Thornton*, 544 F.2d 1005 (9th Cir.1976);

**TENTH CIRCUIT**: Applying a New Mexico statute which imposes a fiduciary duty upon contractors who have been advanced money pursuant to construction contracts, it was held that there was a fiduciary duty sufficient for the Bankruptcy Code. *In re Romero*, 535 F.2d 618 (10th Cir.1976);

**ELEVENTH CIRCUIT [FIFTH CIRCUIT, UNIT B]**: Applying *Davis* and additional federal standards to a Georgia statute which does not require a segregated account for trust funds, the Eleventh Circuit held there was not a fiduciary relationship. *Matter of Cross*, 666 F.2d 873 (5th Cir.1982) (Unit B).

4. As it concerns a fiduciary, Section 17(a)(4) of the Bankruptcy Act of 1898 was not significantly different from current Bankruptcy Code Section 523(a)(4). *Matter of Angelle*, 610 F.2d 1335, 1341 n. 12 (5th Cir.1980). *See also, Ragsdale v. Haller*, 780 F.2d 794, 796 n. 1 (9th Cir.1986). A difference does exist which is significant in analyzing embezzlement under Section 523(a)(4).

Former Section 17(a)(4) required an embezzlement committed while acting in a fiduciary capacity. Section 523(a)(4) does not now make a similar requirement. *See, In re Schultz*, 46 B.R. 880 (Bkrtcy.D.Nev.1985).

5. *See, In re Interstate Agency, Inc.*, 760 F.2d 121 (6th Cir.1985), where payments received by an insurance agent for benefit of an insurance principal but not paid over were held nondischargeable because of a fiduciary relationship between the parties; *In re Livingston*, 40 B.R. 1018 (E.D.Mich.1984), which held that a Michigan statute creates the requisite trust relationship between an insurance agent and his principal to make a debt of nonpayment of premiums nondischargeable in bankruptcy; in *Matter of Nicholson*, 55 B.R. 645 (Bkrtcy.N.D.Ga.1985), the court held that a Georgia statute established a fiduciary relationship between an insurance agent and an insurance company; and similarly *In re Gagliano*, 44 B.R. 259 (Bkrtcy.N.D.Ill. 1984), states that because the Illinois Insurance Code provides that an agent who collects premiums holds them in a fiduciary capacity, a debt on those funds in nondischargeable.

the alleged wrongdoing. As to this requirement, the Alabama statute fails. Second, the majority procedure dictates a process to analyze state statutorily imposed fiduciary trusts. If the Alabama statute, which superficially creates a fiduciary relationship between an insurance agent and its principal, is analyzed under these procedures, it fails again. There are no provisions for a segregated account. The *res* is not defined. Fiduciary duties are not spelled out. In short, the basic elements of a trust are not present. Consequently, the Debtor was not a fiduciary under the Alabama statute.

The Supreme Court of Alabama specifically addressed Section 27–7–36, *Code of Ala.*, 1975 in *Washburn v. Rabun*, 487 So.2d 1361 (Ala.1986). In *Washburn*, the Alabama Court held that absent a contract which requires a trust for insurance premiums, funds do not have to be placed in trust. The parties agree that the contract in this case did not create a trust relationship.[6] Even if this Court adopted the minority view and applied this Alabama case law directly without analyzing the state statute under federal standards, the result would be the same.

Bankruptcy Courts analyzing similar facts and similar state statutes have reached similar conclusions. *In re Lipke*, 54 B.R. 704 (Bkrtcy.W.D.Wis.1985), held that a Wisconsin insurance statute did not define the *res*, spell out fiduciary duties or impose a trust on funds prior to the debt being created. *In re Katzen*, 47 B.R. 738 (Bkrtcy.D.Mass.1985), found that nothing more than a debtor/creditor relationship

existed where there was no contractual or implied duty on an insurance agent to segregate or account for premiums. *Matter of Storms*, 28 B.R. 761 (Bkrtcy.E.D.N.C. 1983), determined that no fiduciary relationship existed where there was no duty to segregate funds, no insistence on the segregation of funds, or requirement to account for funds.

In this District, it has been held that fiduciaries under the Employees Retirement Income Security Act were not fiduciaries for purposes of determining dischargeability under Section 523(a)(4). *In re Nielson*, 53 B.R. 289 (Bkrtcy.N.D.Ala. 1981), *aff'd* No. CV85–PT–2884–E (N.D. Ala. Jan. 24, 1986).

Hartford disclaimed reliance on embezzlement. However, embezzlement, whether or not occurring in a fiduciary capacity, is cause for excepting a debt from discharge under Section 523(a)(4); and a literal reading of Section 27–7–36(b), *Code of Ala.* 1975, imports that McCraney's failure to pay his account balance constitutes embezzlement under that section.[7] In the highly similar case of *Matter of Storms*, 28 B.R. 761 (Bkrtcy.E.D.N.C.1983), Judge Moore wrote that a state may not "place in the way of a debtor's fresh start section 523(a)(4) obstacles not contemplated within the provisions of the Bankruptcy Code." *Id.* at 765. Congressional policy favors dischargeability. *Matter of Cross*, 666 F.2d 873 (5th Cir.1982) (Unit B). The embezzlement contemplated by Section 523(a)(4) as a cause for excepting a debt from discharge is the fraudulent, knowing or willful appropriation of property of an-

---

**6.** The Alabama Court did not discuss the criminal aspects of Section 27–7–36 in *Washburn v. Rabun.* This is of no consequence. Under *Davis*, a trust must exist prior to the act alleged as wrong. Where criminal acts are involved, it is difficult to see how a trust could have existed before the acts creating the debt. *See, Matter of Angelle*, 610 F.2d 1335, 1340 n. 10 (5th Cir.1980).

**7.** *Section 27–7–36, Code of Ala.* 1975, a part of the Alabama Insurance Code, was enacted in 1971. Alabama revised its criminal statutes and adopted a new Criminal Code in 1977. Crimes formerly known as embezzlement were redefined under the descriptive heading of "Misap-

propriation of property". *Code of Ala.* 1975, Section 13A–9–51. Research has revealed no Alabama Criminal Code provision proscribing "embezzlement" as such, or any Alabama Insurance Code provision reconciling embezzlement in terms employed by the new Alabama Criminal Code. In *Hurst v. State*, 21 Ala.App. 361, 108 So.398 (1926), intent was held to be an indispensable element of embezzlement. *But see, South Atlantic Guano Co. v. Childs*, 211 Ala. 637, 101 So. 445 (1924), which suggests a different conclusion in a dischargeability issue then being determined by state courts.

other by a person to whom it has been entrusted or into whose hands it has lawfully come. *In re Sutton*, 39 B.R. 390, 395 (Bkrtcy.M.D.Tenn.1984).

The evidence in this case sustains only that McCraney owed Hartford a debt reduced to judgment. As to dischargeability, it differs in no essential particular from the myriad accounts that exist daily between debtor and creditor. There was no fiduciary relationship, and McCraney was not guilty of embezzlement within the meaning of Section 523(a)(4). Hartford's judgment is a dischargeable obligation. Judgment will be entered accordingly.

As required by 28 U.S.C. Section 157(b)(3), this is a core proceeding. 28 U.S.C. Section 157(b)(2)(I). The foregoing Opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52, F.R.Civ.P.