**In re Marc BLUMBERG f/d/b/a Universal Insurance, Debtor.**

**CORONET INSURANCE COMPANY, Plaintiff,**

**v.**

**Marc BLUMBERG, f/d/b/a Universal Insurance, Defendant.**

**Bankruptcy No. 89 B 10779.
Adv. No. 89 A 667.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 15, 1990.

Steven D. Schneiderman, Dannen, Crane, Heyman & Simon, Chicago, Ill., for debtor-defendant.

Fisch, Lansky, Greenburg & Herman, Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

Marc Blumberg, formerly doing business as Universal Insurance ("Debtor"), filed a voluntary petition in bankruptcy on June 28, 1989 under Chapter 7 of the Bankruptcy Code. On December 1, 1989 Coronet Insurance Company ("Coronet") filed its Second Amended Complaint.[1] The Complaint objects under 11 U.S.C. § 523(a)(4) to discharge of a debt claimed to be owed by Debtor to Coronet for insurance premiums Debtor allegedly collected on Coronet's behalf but failed to remit to Coronet. Debtor has moved to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. *See* Bankruptcy Rule 7012(b), adopting Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Debtor's motion is denied.

### *Facts as Alleged in the Second Amended Complaint*

When ruling on a motion to dismiss for failure to state a claim, a court must presume that all well pleaded facts in the complaint are true. *Gray v. County of Dane*, 854 F.2d 179 (7th Cir.1988). The Second Amended Complaint alleges the following facts:

Coronet is an insurance company. Debtor is an independent, licensed insurance agent and broker who sold certain insurance policies to third parties and "placed" them with Coronet. Second Amended Complaint ¶ 5. Coronet "did write said insurance policies and did bill [Debtor] for the appropriate premiums." Id. at 6. Debtor collected the premiums from the third parties to whom the insurance was sold. The Second Amended Complaint alleges that pursuant to Illinois insurance law, Debtor held these premiums in a fiduciary capacity.

In payment of the amounts owed to Coronet, Debtor sent two checks to Coronet totalling approximately $31,917. These checks were drawn on Debtor's "premium fund trust account." Both checks were returned for insufficient funds.

Coronet sued Debtor in the Circuit Court of Cook County for the amounts owed from the insurance premiums which were not remitted. Judgment was eventually entered in Coronet's favor for $33,167.60. The court found that "malice is the gist of the action based upon misappropriation of fiduciary funds." From the briefs (but not the Complaint) it appears that the judgment was entered by default. The Second Amended Complaint seeks to have this judgment declared nondischargeable.

---

1. Coronet filed its original Complaint objecting to discharge on July 20, 1989, its Amended Complaint on November 8, 1989.

*Analysis*

A proceeding to have a debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4) "arises under" title 11 of the United States Code and is within the subject matter jurisdiction of the United States District Court. 28 U.S.C. § 1334(b). The district court under the authority granted in 28 U.S.C. § 157(b) has referred such proceedings to the bankruptcy court. Local Rule 2.33. "Determinations as to the dischargeability of particular debts" are core proceedings within 28 U.S.C. § 157(b)(2)(I). This court is therefore empowered to enter final orders and judgments in this proceeding. Id. at § 157(b)(1).

In order for Debtor to prevail on his motion to dismiss, it must clearly appear from the pleadings that Coronet can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Swanson v. Wabash, Inc.*, 577 F.Supp. 1308 (N.D.Ill.1983). The issue is not whether Coronet will ultimately prevail, but whether it has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Seventh Circuit has emphasized, however, that "[d]espite their liberality on pleading matters, ... the federal rules still require that a complaint allege facts that, if proven, would provide an adequate basis for each claim." *Gray*, 854 F.2d at 182. The court must consider both pleaded facts and reasonable inferences drawn from pleaded facts, in a light most favorable to the plaintiff when reviewing a defendant's motion to dismiss. *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir.1979).

The basis for Coronet's objection to the discharge of its claim against Debtor is 11 U.S.C. § 523(a)(4). This provision provides in part:

A discharge under section 727 ... does not discharge an individual debtor from any debt— ...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....

11 U.S.C. § 523(a)(4).

To establish that a debt is nondischargeable under 11 U.S.C. § 523(a)(4), a creditor must establish three elements: (1) the existence of an express trust; (2) that the debt was caused by fraud or defalcation; and (3) debtor was acting as a fiduciary to the creditor at the time the debt was created. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987); *Harasymiw v. Selfreliance Federal Credit Union*, 97 B.R. 924 (N.D.Ill.1989), *aff'd on other grounds*, 895 F.2d 1170 (7th Cir.1990). The basic policy underlying § 523(a)(4) was explained by the Sixth Circuit in *In re Johnson*, 691 F.2d 249, 256 (6th Cir.1982):

Although the "badness" of fraud, embezzlement or misappropriation is readily apparent, creating a debt by breaching a fiduciary duty is a sufficiently bad act to invoke the section 17(a)(4)[2] exception even without a subjective mental state evidencing intent to breach a known fiduciary duty or bad faith in doing so. This is because the requisite "badness," to conform with the spirit of the bankruptcy laws, is supplied by an individual's special legal status with respect to another, with its attendant duties and high standards of dealing, and the act of breaching these duties.

Debtor argues that Coronet has failed to state a claim under § 523(a)(4) because Coronet has failed to allege facts establishing that Debtor was acting in a fiduciary capacity when he allegedly collected and failed to remit the insurance premiums underlying the debt. Debtor essentially argues that Coronet has alleged nothing more than a routine debtor-creditor relationship.

---

**2.** Section 17(a)(4) of the Bankruptcy Act of 1898 is the predecessor to 11 U.S.C. § 523(a)(4). For purposes of determining whether a debtor was acting in a fiduciary capacity at the time the debt sought to be nondischargeable arose,

§ 523(a)(4) of the Code is indistinguishable from § 17(a)(4) of the Act. *See In re Thomas*, 729 F.2d 502, 504–05 (7th Cir.1984) (viewing precedent construing § 17(a)(4) as demonstrative of application of § 523(a)(4) on this issue).

## 1. Collateral Estoppel

■ As an initial argument, Coronet asserts that the Illinois state court judgment collaterally estops Debtor from contesting that he was acting in a fiduciary capacity when he allegedly collected but failed to remit the insurance premiums to Coronet. The state court judgment provides in part that "malice is the gist of the action based upon misappropriation of fiduciary funds."

The Seventh Circuit has specifically addressed the issue of collateral estoppel in the context of 11 U.S.C. § 523(a)(4). In *Klingman v. Levinson*, 831 F.2d 1292, the court stated:

> Where a state court determines *factual questions* using the *same standards* as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments.

Id. at 1295 (emphasis added). The court also explained that four elements must be established for collateral estoppel to apply: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must actually have been litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action. Id.

In the present procedural status of the case Coronet has not yet demonstrated that collateral estoppel is applicable to the issue of whether Debtor was acting in a fiduciary capacity. The Second Amended Complaint alleges only that Coronet sued Debtor in state court for the amount of the premiums Debtor failed to remit and that judgment was entered against Debtor. There are no specific allegations as to the legal theories Coronet advanced in the state court. From the above quoted portion of the judgment it appears that the action was based on a misappropriation theory. Even assuming this, it is impossible to evaluate from the present record whether the apparent finding of misappropriating "fiduciary funds," as opposed to misappropriating other funds, was essential to the final judgment.[3] Generally a full record of pleadings and procedures before the state court is required in order to make the requisite analysis. If that record is presented, we must then meet the question whether a default judgment can have collateral estoppel effect. *See In re Herwig*, 77 B.R. 662, 664 (Bankr.S.D.Ill.1987) and cases there cited. Coronet's collateral estoppel argument is therefore rejected for the present without prejudice to revisiting this issue at trial of this case.

## 2. Acting in a Fiduciary Capacity

■ The issue of whether a party is "acting in a fiduciary capacity" within 11 U.S.C. § 523(a)(4) is one of federal law, not state law. *Johnson*, 691 F.2d at 251; *In re Janikowski*, 60 B.R. 784, 788 (Bankr.N.D. Ill.1986). In order to be acting as a fiduciary, a party must be acting pursuant to an express or technical trust, not a trust which the law implies from a contract. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934) (construing § 17(a)(4) of the Bankruptcy Act of 1898); *In re Sax*, 106 B.R. 534, 539 (Bankr.N.D.Ill.1989). Further, the party must be acting as a trustee prior to the act giving rise to the debt underlying the dispute. Id.

In determining whether as a matter of federal law a debtor was acting as a fiduciary, courts have considered substantive state law as a central factor in the analysis. *Johnson*, 691 F.2d at 251; *Janikowski*, 60 B.R. at 788. In *Johnson*, for example, the Sixth Circuit held that Michigan's Building Contract Fund Act imposed a fiduciary obligation on subcontractors who held monies advanced by the project owner to apply those monies to meet the costs of that specific project. The specific statutory provision in issue provided:

> [T]he building contract fund paid by any person to a ... subcontractor, shall be

---

**3.** It is unnecessary to reach the other arguments advanced by Debtor for finding collateral estoppel inapplicable.

considered by this act to be a trust fund for the benefit of the person making the payment, contractors, laborers ... or materialmen, and the ... subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

691 F.2d at 252 (*quoting* Mich.Comp.Laws Ann. § 570.151).

The Sixth Circuit specifically found that the Building Contract Fund Act "satisfies the express or technical trust requirement of § 17(a)(4) [predecessor to § 523(a)(4)]." Id. at 252. The court observed that the trust relationship was "unambiguously imposed" on a subcontractor by the language of the statute and that the trust res was "clearly defined" as the money held in the building contract fund. Id. The court also observed that the fact that the state statute did not "mandate" any particular form or procedures in handling the monies in the fund did not undercut the validity of the trust. Id. *See In re Thomas*, 729 F.2d 502, 504–05 (7th Cir.1984) ("Probably recognizing that 11 U.S.C. § 523(a)(4) has been construed against them ..., defendants [debtor-contractors] no longer contest the applicability of the 'defalcation while acting in a fiduciary capacity' exception ... to discharge when tied to a state statute such as Wis.Stat. § 779.16, if applicable.").

■ Coronet argues that the applicable Illinois insurance law imposes a fiduciary obligation on licensed brokers such as Debtor to hold and remit premiums collected on behalf of insurance companies such as Coronet. Coronet then asserts that under the reasoning in *Johnson*, the fiduciary obligation imposed under Illinois law should be recognized as creating a fiduciary relationship as a matter of federal law within § 523(a)(4).

In pertinent part, the Illinois statute provides:

*Any money which a insurance producer ... receives for soliciting, negotiating, [or] effecting ... policies of insurance shall be held in a fiduciary capacity and shall not be misappropriated, converted or improperly withheld.* Any insurance company which delivers to any insurance producer in this State a policy or contract for insurance pursuant to the application or request of an insurance producer, authorizes such producer to collect or receive on its behalf payment of any premium which is due on such policy or contract for insurance at the time of its issuance or delivery and any premium which becomes due on such policy or contract not more than 90 days thereafter.

Any insurer which issues a policy of insurance shall be deemed to have received payment of the premium if the insured paid any insurance producer requesting such coverage.

Ill.Rev.Stat. ch. 73, ¶ 1065.55–1 (emphasis added).[4] This paragraph also makes it a crime for an insurance producer to "knowingly misappropriate[ ] or convert[ ] to his own use or illegally withhold[ ] fiduciary monies." Id.

In order "to implement" the above quoted statutory provisions and certain other paragraphs, the Department of Insurance has enacted regulations. 50 Ill.Admin. Code § 3113.20(a) (January 1, 1985). Specifically, part 3113 of Title 50 of the Illinois Administrative Code [as amended 14 Ill. Reg. 2088 (January 9, 1990)] is entitled "Premium Fund Trust Account," and states that its purpose is "[t]o establish minimum standards required of licensees to assure the proper handling of insurance transactions specifically in regard to premiums and other monies received from insurers, insureds, other licensees or registered firms." Id. at § 3113.20(b). A "Premium Fund Trust Account" ("PFTA") is defined as "a special fiduciary account established

---

**4.** An "insurance producer" is defined as "an individual who solicits negotiates, effects, procures [or] renews ... policies of insurance covering property or risks located in Illinois." Ill. Rev.Stat. ch. 73, ¶ 1065.38–1(b). It is unlawful for a person to act as an insurance producer unless he or she has been duly licensed for the classes of insurance at issue. Id. at ¶ 1065.39–2(a). Further, commissions can only be paid to properly licensed insurance producers. Id. at ¶ 1065.54–1.

and maintained by a licensee into which all premiums collected are to be deposited." Id. at § 3113.30. A licensee is required to establish a PFTA if the licensee holds any premiums for 15 days or more before remitting them or if he or she deposits collected premiums in a financial institution account. Id. at § 3113.40(c)(1), (2). However, "the absence of the PFTA does not relieve the licensee of the obligation to hold the premiums in a fiduciary capacity and the premiums shall not be used for other purposes." Id. at § 3113.40(c)(3).

A licensee who maintains or is required to maintain a PFTA "must deposit all premiums received into the PFTA." Id. at § 3113.40(d). Further, only certain transactions are defined as "lawful disbursements" from the PFTA. Id. at § 3113.40(g). "The PFTA balance in the financial institution shall at all times be the amount deposited less lawful withdrawals." Id. at § 3113.40(i). In addition, the monies held in a PFTA can only be invested in certain authorized low risk investments. Id. at § 3113.40(h). Finally, licensees are required to maintain certain books and records regarding the PFTA, including a cash receipts and disbursements register. Id. at § 3113.50 as amended 14 Ill.Reg. 2088 (January 19, 1990).

The statutory language coupled with the administrative regulations sufficiently establishes that under the allegations set forth in the Second Amended Complaint, Coronet has sufficiently stated a claim that Debtor held the premiums collected on behalf of Coronet as a fiduciary within § 523(a)(4). The statute specifically provides that such funds are held "in a fiduciary capacity." Further, the administrative regulations mandate the creation of a separate account in which the premiums are to be deposited if they are not remitted directly to the insurance company. In other words, just as in *Johnson*, Illinois law has mandated the creation of a fiduciary relationship and has specifically identified the res of the trust, namely the premiums collected by a licensed insurance producer. In

addition, the regulations provide for the creation of a separate account, the PFTA, and govern both the manner in which PFTA funds may be invested and permissible withdrawals from the fund. *See In re Gagliano*, 44 B.R. 259, 261 (Bankr.N.D.Ill. 1984) (Debtor "acknowledge[d] the existence of the fiduciary relationship under the Illinois Insurance Code" and that "he was acting in a fiduciary capacity in collecting insurance premiums on behalf of [the insurance company].").

Debtor argues that the effect of the regulations should not be considered in evaluating whether he was acting as a fiduciary, and that once the obligations imposed thereunder are ignored, the statute alone is insufficient to satisfy § 523(a)(4). This argument is unpersuasive. The court's task is to evaluate whether as a matter of *federal law* Debtor is acting in a fiduciary capacity in connection with the debt when it arose. In making this evaluation the court must consider Debtor's actual obligations and duties under state law. Pursuant to Illinois law as set forth in the regulations, Debtor created a PFTA and the checks to Coronet that bounced were drawn on this account. The regulations were adopted to implement ¶ 1065.55–1 of the Illinois Revised Statute (quoted above) (or more precisely, its statutory predecessor), and clearly bound Debtor and other insurance producers. In other words, the regulations spelled out the legal obligations Debtor owed when he received the premiums and failed to remit them to Coronet. There is no coherent argument for not considering these obligations in determining whether § 523(a)(4) has been satisfied.[5] *Cf. In re Lipke*, 54 B.R. 704, 706 (Bankr.W. D.Wis.1985) (noting but not reaching the issue of whether regulations promulgated by state administrative agencies should be considered in determining whether a debtor was acting in a fiduciary capacity).

Debtor also urges this court to follow *In re McCraney*, 63 B.R. 64 (Bankr.N.D.Ala. 1986). In that case the bankruptcy court held that no fiduciary relationship existed

---

**5.** Debtor has not argued that the regulations contradict the statutory language or are other- wise invalid.

between an insurance agent who failed to remit premiums and the insurance company who issued the policies. Alabama law provided in part:

> All premiums ... or funds belonging to others received by an agent, broker, or solicitor in transactions under his license shall be trust funds so received by the licensee in a fiduciary capacity, and the licensee in the applicable regular course of business shall account for and pay the same to the insurer....

The court reasoned that in order to determine whether a debtor was acting as a fiduciary under § 523(a)(4) additional factors, besides just a state statute declaring such a relationship to exist, must be considered. Id. at 66. Specifically, (1) whether the individual was required to maintain a segregated account; (2) whether the res is defined; (3) whether fiduciary duties are spelled out; and (4) does the statute create the basic elements of a trust. *See also In re Koelfgen,* 87 B.R. 993 (Bankr.D.Minn.1988) (finding no fiduciary relationship between agent and insurance company under the parties contract or Minnesota law); *In re Katzen,* 47 B.R. 738 (Bankr.D.Mass.1985) (no fiduciary relationship between agent and insurance agent). The court then held that the Alabama statute quoted above failed to satisfy any of these elements. Id. at 67.[6] The court also observed that "the evidence in this case sustains only that [debtor] owed [the insurance company] a debt reduced to judgment. As to dischargeability, it differs in no essential particular from the myriad accounts that exist daily between debtor and creditor." Id. at 68.[7]

The facts as alleged in the Second Amended Complaint set forth a cause of action even under the more rigorous *McCraney* standard. As discussed, the regulations in certain circumstances mandate the creation of a separate account, the PFTA. Debtor maintained such an account and was therefore obligated to deposit all premiums into that account. 50 Ill.Admin. Code § 3113.40(d). As discussed, Debtor's duties with respect to his PFTA, including investments and withdrawals, were clearly defined under the regulations. These duties existed when the PFTA was created, prior to Debtor's alleged wrongful acts, and establish that Debtor was acting in a fiduciary capacity within 11 U.S.C. § 523(a)(4) at the time of his alleged misdeeds.

Debtor's motion to dismiss the Second Amended Complaint is therefore denied.

---

**6.** It is difficult to square *McCraney* with *Johnson.* In both cases the statutes in issue essentially declare that certain monies will be held in trust with no specific declaration of the scope of the fiduciary duties owed by the holder of such funds fiduciary duties. In each case, however, such duties were implicit. The insurance agent and subcontractor were each required to simply hold the money for the benefit of the beneficiaries—the insurance company in *McCraney* and the materialmen and laborers in *Johnson*—and remit the monies to them at appropriate times. In *Johnson,* the Sixth Circuit found this to be sufficient to create a fiduciary relationship as a matter of federal law. In *McCraney,* the bankruptcy court reached the other result.

**7.** One factor that seems to underlie the *McCraney* court's position is the belief that the denial of discharge as to that specific debt would be inappropriate because the debt owed to the insurance company was indistinguishable from other debts owed by the debtor. Illinois law, however, imposes numerous obligations and responsibilities upon both the insurance producer and the insurance agency as a result of their relationship. *See, e.g.,* Ill.Rev.Stat. ch. 73, ¶ 1065.55-1. These obligations distinguish the debts owed by such insurance producers to insurance agencies from the debts they owe to other creditors such as suppliers.