**In re Thomas R. VOLPERT, Jr., Debtor.**

**PEOPLE of the State of Illinois, ex rel., George RYAN, Secretary of State for the State of Illinois, Plaintiff,**

**v.**

**Thomas R. VOLPERT, Jr. d/b/a Mind Over Matter Games, and as President of Mind Over Matter Games, an Illinois Corporation, Defendant.**

**Bankruptcy No. 93 B 13982.
Adv. No. 93 A 01706.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 23, 1994.

---

Thomas L. Ciecko, Asst. Atty. Gen., Gen. Law Div., Chicago, IL, for plaintiff.

Bernard M. Ellis, Chicago, IL, for debtor/defendant.

### MEMORANDUM OF OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This adversary proceeding relates to the bankruptcy case of the defendant, Debtor Thomas R. Volpert, Jr. ("Debtor" or "defendant" or "Volpert"), filed under Chapter 7 of the Bankruptcy Code. The Plaintiff, People of the State of Illinois, ex rel. Secretary of State George Ryan, by and through Attorney General Roland W. Burris ("State" or "Attorney General"), filed a seven-count adversary complaint. The Attorney General asserts therein that debts allegedly owed to certain Illinois investors are non-dischargeable under 11 U.S.C. § 523(a). He further contends Volpert should be denied a discharge under 11 U.S.C. § 727(a).

In response, Volpert moved to dismiss the State's complaint on all counts for lack of standing. Alternatively, he seeks dismissal of each count individually for failure to state a cause of action. For reasons stated herein, Volpert's Motion to Dismiss is allowed in part and denied in part. His Motion to Dismiss the entire adversary case for lack of standing is denied. The Motion to Dismiss Count VII is denied. The Motions to Dismiss Counts I, II, III, IV, V, and VI are granted, without prejudice, and with leave for the State to file amended counts.

## FACTS ALLEGED IN COMPLAINT

### Public Offering of Mind Over Matter Games, Inc.

This adversary proceeding arises from Volpert's role as principal officer of Mind Over Matter Games, Inc. ("MOMG" or "Corporation"), a now-dissolved Illinois Corporation. MOMG was allegedly formed in or around 1986 to develop and market various games and devices for public consumption. In January 1989, MOMG undertook to raise additional capital by publicly offering newly issued equity shares in its own name ("Public Offering"). As part of the Public Offering, various offering circulars or preliminary prospectuses were prepared and circulated to potential investors. Most allegations in the State's adversary pleadings pertain to these documents.

Not long after MOMG's initial Public Offering, the Illinois Secretary of State ("Secretary") took issue with the Corporation's capital raising efforts. The Secretary started an investigation into MOMG's Public Offering. In light of his findings, the Secretary scheduled a formal hearing on the matter.

The State now alleges that MOMG, with aid and participation of its President, Thomas Volpert, circulated copies of MOMG's preliminary prospectuses in violation of the Illinois Securities Law of 1953, as amended ("Illinois Securities Law"). It is contended that MOMG and Volpert, *inter alia*, failed to register and qualify the proffered securities properly prior to the Public Offering, and, in doing so, worked an alleged fraud or deceit on purchasers of the securities.

MOMG was involuntarily dissolved on January 2, 1990, for failure to file an annual report and/or failure to pay franchise taxes. The Secretary nevertheless continued to pursue MOMG and also Volpert for his asserted participation in the allegedly fraudulent securities offering. MOMG, by and through Volpert, entered into negotiations with the Secretary in late 1990 or early 1991 in an attempt to resolve the alleged securities law violations.

### The Consent Order

On March 9, 1991, MOMG, allegedly by and through Volpert, entered into a "Stipulation to Enter Consent Order of Prohibition" ("Stipulation") with the State. Five days later, on March 14, 1991, the Secretary signed and entered a "Consent Order," incorporating the Stipulation by reference, all in lieu of the previously scheduled formal hearing.[1] Both the Stipulation and the Consent Order are pleaded as part of the Original Complaint. The Consent Order, *inter alia*, required MOMG to make a good faith offer to rescind all sales of its stock made during its Public Offering. In Exhibits B through G of the Stipulation, fifty-five MOMG shareholders were identified and scheduled to receive rescission offers. The scheduled shareholders were individual or household investors who resided in Illinois at the time of their respective stock purchases. The Order further provided that offers to rescind were to be irrevocable for fifteen days and that MOMG had six months within which to pay any accepted offers. Finally, MOMG stipulated that any failure to comply with terms of the Consent Order would constitute a violation of § 12 of the Illinois Securities Law and that "further enforcement action [would] follow, including application to a court to enforce the Consent Order[.]"

The Consent Order and Stipulation comprise a set of debts thus undertaken by MOMG and due to a number of individuals.

---

1. Under Illinois law, the Secretary of State may enter agreed settlements, stipulations, and "consent orders" in lieu of conducting formal hearings, in accordance with the provisions of the Illinois Administrative Procedure Act, 5 ILCS 100/1–1 et seq. 815 ILCS 5/11.

### Volpert's Chapter 7 Bankruptcy Petition

On June 30, 1993, Volpert filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Attorney General has not attached Volpert's bankruptcy petition as an exhibit to his First Amended Adversary Complaint, and reference to it is outside the adversary case record. Therefore, it may not be considered in dealing with the pending motion to dismiss. Nevertheless, it is appropriate to note the relevance of Volpert's statements therein to the question of whether the State should be allowed to file amended pleadings.

In his bankruptcy petition, Volpert listed "MIND OVER MATTER GAMES" as an alias. He further characterized the nature of his debt as both "Non–Business/Consumer" and "Business" debt. He did not, however, detail his relationship with MOMG in question 16 of the "Debtor's Statement of Financial Affairs," which required him to:

> list the names and addresses of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation ... within the two years immediately preceding the commencement of his case, or in which the debtor owed 5 percent or more of the voting or equity securities within the two years immediately preceding the commencement of the case.

However, in the schedule of his petition entitled "Creditors Holding Unsecured Nonpriority Claims," Volpert listed, as creditors, many individuals and entities who purchased stock in MOMG. He further lists, in the same schedule, thousands of dollars of MOMG's debt as his own debt. By scheduling debts owed by MOMG in his own personal schedule, Volpert now seeks discharge of any possible personal liability for those debts.

### The State's Original and First Amended Adversary Complaints

On December 29, 1993, the State filed its eleven-count original adversary complaint ("Original Adversary Complaint"), naming as defendant "Thomas R. Volpert, Jr. d/b/a MIND OVER MATTER GAMES and as President of MIND OVER MATTER GAMES, an Illinois corporation." The Attorney General alleged therein that MOMG and Volpert "failed to complete said recision offer" in accordance with terms of the Consent Order. The State asked this Court: to find the unfulfilled recision offer to comprise debts non-dischargeable under § 523(a) of the Bankruptcy Code; to deny Volpert a discharge under § 727(a); and to appoint a receiver for the Debtor's remaining assets.

By minute order dated February 2, 1994, this Court struck Counts II, III, IV, and V of the State's Original Adversary Complaint for reasons stated from the bench. The State was given leave to amend its complaint, and, on February 9, 1994, filed the now-pending, seven-count first amended adversary complaint ("First Amended Complaint"). The State now asserts, in Counts I through IV, that the debts allegedly owed defrauded MOMG shareholders should be deemed non-dischargeable under § 523(a) of the Bankruptcy Code. The State further requests, in Counts V through VII, that Volpert be denied a discharge under § 727(a). It no longer appears to seek a receiver, conceding that role to the Chapter 7 Trustee.

### Debtor's Motion to Dismiss

Volpert moved to dismiss the State's First Amended Complaint ("Motion to Dismiss"). He first argues the Complaint should be dismissed on all counts because the State lacks standing to bring this adversary proceeding. Alternatively, he seeks dismissal of each separate count, individually, for asserted failure of each to state a basis for relief.

### Jurisdiction

This matter is before this Court pursuant to 28 U.S.C. § 157 and has been referred under Local General Rule 2.33(A). Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

### Standards for Motion to Dismiss

In order for a defendant to prevail on its motion to dismiss, it must appear from the pleadings that the plaintiff can prove no set.

of facts which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991). The issue is not whether the plaintiff can ultimately prevail, but whether it has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Perkins & Gaynor v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). When reviewing a motion to dismiss, the court must take all well-pleaded facts alleged in the pleadings as true and must further construe the pleadings and all reasonable inferences derived therefrom in a light most favorable to the non-moving party. *Gorski*, 929 F.2d at 1186; *Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir.1991).

### *DISCUSSION*

### I. *STANDING*

The State brings this adversary proceeding in various counts, some of which are complaints to determine dischargeability of debts due to a number of individuals under § 523(a) of the Bankruptcy Code, Title 11 U.S.C., and others of which are objections to discharge brought under § 727(a). As a threshold issue, this Court must determine whether the State has standing to assert the pending claims on behalf of those persons.

### A. *Section 523(a) Claims*

In order to challenge the dischargeability of a debt under § 523(a), "the creditor to whom such debt is owed" must request the bankruptcy court to except the debt from discharge. 11 U.S.C. § 523(c)(1). Whether the State is a "creditor" must be determined under applicable non-bankruptcy law. Volpert asserts, and the Attorney General concedes, that the State is not itself a "creditor" owed money by debtor. The Attorney General maintains, however, that the State has standing to sue to collect on behalf of its injured citizens under applicable non-bankruptcy law, and the debts due to them are therefore due to be paid to the State for the benefit of those persons. He argues, first, that the State derives standing from the Illinois Securities Law of 1953, 815 ILCS 5/1 *et seq.* Alternatively, he contends the State has standing under the common law doctrine of *parens patriae*.

### (1) *Illinois Securities Law of 1953*

■ Notwithstanding the text of § 523(c)(1), dischargeability complaints may be pursued—in limited circumstances—through a representative. *See, e.g., In re Livaditis*, 132 B.R. 897 (Bankr.N.D.Ill.1991) (Schmetterer, J.); *In re Tapper*, 123 B.R. 594 (Bankr.N.D.Ill.1991) (Fisher, J.); *In re DeFelice*, 77 B.R. 376 (Bankr.D.Conn.1987); *In re W. Tex. Marketing Corp.*, 82 B.R. 829 (Bankr.N.D.Tex.1988). This Court has previously found it "well established that state Attorney Generals may prosecute dischargeability actions under § 523(c) on behalf of injured creditors provided there is statutory authority under their state law to do so." *Livaditis*, 132 B.R. at 900 (and cases cited); *see also Tapper*, 123 B.R. at 599 (and cases cited). The Illinois Securities Law provides sufficient statutory authority for the State to maintain these non-dischargeability claims under § 523 of the Bankruptcy Code.

■ Section 5/11 of Illinois Securities Law expressly vests administration of that statute with the Secretary of State and further grants the Secretary broad rulemaking and adjudicative powers with which to fulfill his responsibilities. 815 ILCS 5/11. Thus, the Secretary may, *inter alia:* promulgate rules and regulations to carry out the Act; investigate alleged securities fraud as necessary to protect public interests; or conduct administrative hearings to enjoin ongoing and future securities violations. *Id.; see* 5 ILCS 100/1–1 *et seq.* ("Illinois Administrative Procedure Act").

Although administrative orders are typically entered after some type of quasi-adjudicative hearing, the Illinois Securities Law explicitly authorizes the Secretary to enter into agreed settlements, stipulations, or "consent orders" in lieu of holding such hearings. 815 ILCS 5/11. Consent orders and stipulations for entry of such orders carry "the full force and effect of an order issued by the Secretary of State." *Id.* It is a violation of Illinois Securities Law "to fail to comply with the terms of any order of the Secretary of

256

the Secretary of State issued pursuant to § 11 hereof." 815 ILCS 5/12(D).

Because failure to comply with terms of a consent order is a violation of Illinois Securities Law, the Attorney General may sue to enforce compliance with such orders. The Secretary of State, through the office of the Attorney General, may sue in state court to enjoin violations of, or enforce compliance with, Illinois Securities Law:

[t]he Attorney General may bring an action in any circuit court of the State . . . in the name and on behalf of the State . . . to enjoin those persons who are continuing or doing any act in violation of this Act or to enforce compliance with this Act.

815 ILCS 5/13(F).

By its terms, the Consent Order in the case at bar mandated that MOMG give the fifty-five investors listed in Exhibits B–G of the Stipulation recision offers by May 1, 1991. It further required all accepted offers to be paid within six months of June 1, 1991. The Attorney General asserts, on information and belief, that MOMG and Volpert failed to complete the ordered recision offers within the time frames provided. The State accordingly has express statutory authority under § 513(f) of the Illinois Securities Law to seek enforcement of the Consent Order in state court.

Illinois law does not explicitly authorize the State to enforce consent orders by asserting individual claims in bankruptcy. However, the right of the State under non-bankruptcy law to enforce such claims in state court gives it standing in bankruptcy to enforce the non-bankruptcy debts and seek their non-dischargeability.

■ Section 13(f) of Illinois Securities Law codifies the State's public policy prohibiting fraudulent securities offerings and protecting vulnerable investors. *See Boatmen's Bank of Benton v. Durham,* 203 Ill.App.3d 921, 926, 148 Ill.Dec. 900, 904, 561 N.E.2d 206, 210 (5th Dist.1990); *Martin v. Orvis Bros. & Co.,* 25 Ill.App.3d 238, 245, 323 N.E.2d 73, 78–79 (1st Dist.1974). Illinois Securities Law is "paternalistic" and is liberally construed so as to better protect the public from deceit and to prevent fraud in the sale of securities.

*Meihsner v. Runyon,* 23 Ill.App.2d 446, 456, 163 N.E.2d 236, 246 (1960). Accordingly, under the strong public policy favoring enforcement of Illinois Securities Law by the State, the present claims may be brought by the State on behalf of defrauded purchasers. Since the State is entitled to collect on behalf of its citizens, its claims for their behalf make it a "creditor to whom such debt is owed" for the benefit of those citizens within the meaning of § 523(c)(1).

### (2) *Parens Patriae*

■ The Attorney General further argues the State has standing to bring the pending § 523(a) claims under the doctrine of *parens patriae.* The concept of *parens patriae,* literally "parent of the country," confers standing to sue when a state seeks to protect a "quasi-sovereign interest." *See generally Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez,* 458 U.S. 592, 600–06, 102 S.Ct. 3260, 3265–68, 73 L.Ed.2d 995 (1982), (tracing the common law roots of *parens patriae* standing and summarizing its application in modern case law). To assert *parens patriae* standing, the State must be more than a mere "nominal party without a real interest of its own." *Id.* at 600, 102 S.Ct. at 3265. Rather, it must "articulate an interest apart from the interests of particular private parties" on whose behalf the action is brought. *Id.* at 607, 102 S.Ct. at 3268. The State must further satisfy a numerosity test—namely, it must allege an "injury to a sufficiently substantial segment of its population." *Id.*

### (a) *Quasi–Sovereign Interests*

■ As defined by the Supreme Court in *Snapp,* quasi-sovereign interests "consist of a set of interests that the state has in the well-being of its populace." *Id.* at 602, 102 S.Ct. at 3266. A state has a quasi-sovereign interest in the general health and well-being of its residents—be it physical or economic. *Id.* at 607, 102 S.Ct. at 3268–69. A state also has a quasi-sovereign interest in "ensuring that the State and its residents are not excluded from the benefits that are to flow from participation in the federal system." *Id.* at 608, 102 S.Ct. at 3269. Beyond these general examples, the Supreme Court gave

very little guidance as to when an interest qualifies as "quasi-sovereign." The Court suggested, however, that *parens patriae* standing arises most often in areas where a state "would likely attempt to address [the alleged injury] through its sovereign lawmaking powers." *Id.*

■ Contrary to Volpert's assertions, the State is more than a mere "nominal party" in this case. The State of Illinois has a direct interest in protecting individual securities investors from economic harm caused by fraudulent offerings, and has long exercised its authority to protect such investors. The State addressed such concern through its lawmaking powers by enacting the Illinois Securities Law of 1953. A state of the United States clearly has a quasi-sovereign interest in maintaining the integrity of its legislative and police powers. *See In re Trujillo,* 135 B.R. 674, 675–76 (Bankr.D.Colo.1992) (Colorado held to have "quasi-sovereign interest" in enforcing Colorado Consumer Protection Act). The State of Illinois' interest in enforcing its securities law in state court is directly tied to its attempts to bar discharge of related underlying debts in bankruptcy. *See DeFelice,* 77 B.R. at 380. If the State were denied the right to bring these non-dischargeability claims, the resulting bankruptcy discharge would effectively emasculate its authority to enforce the Illinois Securities Law in state court.

#### (b) *Numerosity*

■ In addition to identifying a quasi-sovereign interest to assert *parens patriae* standing, the State must also allege an "injury to a sufficiently substantial segment of its population." *Snapp,* 458 U.S. at 607, 102 S.Ct. at 3269. There is no brightline test for what constitutes "sufficiently substantial"; rather, such determination must be made based on pertinent circumstances. The Supreme Court has indicated, however, that courts must consider both the "direct" and "indirect" effects of an alleged injury when making this determination. *Id.*

Here, the Illinois Attorney General asserts direct injury to as many as fifty-five investors who allegedly purchased securities from MOMG following an unlawful offering and who stood to benefit from the ordered recision offers. It is not just a few isolated instances that are complained of. On the face of the pleading, fifty-five directly injured investors could well constitute a "sufficiently substantial" segment of the State's population.

From the viewpoint of the persons who were allegedly injured, the sums involved appear too small to warrant engagement of private lawyers to assert their claims, and in any event, the time for them to do so has expired. *See* fn. 3. Viewed from the perspective of the State, if the charges can be proved, the activity complained of was so serious as to make a group of fifty-five victims large enough to warrant state action.

Moreover, the Supreme Court in *Snapp* directed that the indirect effects of an alleged injury also be considered. Here, the State's quasi-sovereign interest is directed at enforcing Illinois Securities Law for the collective value of such enforcement to all of its citizens—not just for benefit of the individuals allegedly harmed in the pending case. Accordingly the State further has established the requisite numerosity under the doctrine of *parens patriae.*

Thus plaintiff has standing to bring the claims under § 523(a) of the Bankruptcy Code.

#### B. *Section 727(a) Claims*

■ The standing of the State to bring a § 727(a) claim is even stronger.

Only a creditor, trustee, or United States trustee may file an objection to discharge pursuant to § 727(a) of the Bankruptcy Code. 11 U.S.C. § 727(c)(1). The State's standing assertedly arises from its above-described status as "creditor" of the estate. Under the Bankruptcy Code, a "creditor" is an "entity that has a claim against the debtor ... [or the debtor's] estate...." 11 U.S.C. § 101(10). A "claim" is defined as either a "right to payment" or "right to an equitable remedy" for breach of performance if such breach gives rise to payment.[2]

---

2. Section 101(5) of the Bankruptcy Code provides:

■ As previously noted, the State is not a "creditor" for its own benefit and does not hold a "claim" in its own name and on its own behalf. However, § 727(c)(1) requires only that the party objecting to discharge be a "creditor"—not the "creditor to whom such debt is owed," as required under 11 U.S.C. § 523(c)(1). The definition of "creditor" found in § 101(10) only requires that the entity "possess" some bankruptcy claim, not that it be owed money. In this case, the persons who assertedly own a "claim" for bankruptcy purposes are the allegedly injured investors. Viewing the pleadings in a light most favorable to the State, the assertedly injured investors have identifiable "rights to payment" from Volpert under Illinois Securities Law. As earlier noted, however, applicable non-bankruptcy law empowers the State to "possess" and assert these claims on behalf of its injured citizens under Illinois Securities Law and the doctrine of *parens patriae*. The State is clearly a "creditor" in that sense and thus has standing to object to Volpert's discharge under § 727(a) of the Bankruptcy Code.

This reasoning accords with the Supreme Court's holding in *Nathanson v. NLRB*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), wherein the NLRB was held to be a "creditor" for the purpose of filing a bankruptcy claim for a back pay award owed to the debtor's employees.[3] The Court emphasized in *Nathanson* that the NLRB was the "public agent chosen to enforce the National Labor Relations Act[.]" *Id.* at 27, 73 S.Ct. at 82. As in the case at bar, applicable non-bankruptcy law empowered the NLRB to bring "claims" on behalf of the injured employees. The State of Illinois, by the same reasoning, is a "creditor" under § 101(10) of the Bankruptcy Code and is thereby empowered to object to Volpert's discharge under § 727(a).

## II. MOTIONS TO DISMISS COUNTS INDIVIDUALLY

Volpert has also moved, in the alternative, to dismiss each separate count individually for failure to state a cause of action. Part of the problem in reviewing the pending Complaint is that the pleading did not clearly parse out the requisite elements so that the theories pleaded could be easily followed. Upon repleading the stricken counts, more precise work will be necessary.

### Pleading Standards

■ Under federal "notice" pleading requirements, pleadings need contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a) (as made applicable to this adversary proceeding by Fed.R.Bankr.P. 7008); *see Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1183 (7th Cir.1989). "Notice" pleading merely requires, in order to state a claim for relief, that plaintiff give notice to defendant of the theory behind claims alleged and the basic facts supporting those allegations. *Maclin v. Paulson*, 627 F.2d 83, 86 (7th Cir.1980). So long as fair notice has been given and the court can glean an actionable claim from the complaint, the court must entertain the party's case. *See American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 723 (7th Cir.1986). "A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents." *Bartholet*

---

"claim" means a—
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;
11 U.S.C. § 101(5).

3. Unlike the NLRB in *Nathanson*, the Illinois Attorney General is not the only party entitled to enforce the Secretary's Consent Order. The injured investors could always object to the discharge on their own behalf as "creditors". This distinction is not significant. *See In re Smith*, 39 B.R. 690, 693, n. 2 (Bankr.N.D.Ill.1984). Attorney generals among the various states provide a significant public service by bringing these claims on behalf of injured citizens. Moreover, those persons relied on this action by the State. They did not file their own actions to bar discharge or dischargeability and, under Fed. R.Bankr.P. 4004(a), the permitted time (60 days

*v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992).

When a party alleges fraudulent activity in its federal pleadings, however, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b) (as made applicable by Fed. R.Bankr.P. 7009). Rule 9(b) should nevertheless still be read in conjunction with Rule 8(a). Thus, it is not necessary that a plaintiff plead each element of fraud, so long as the circumstances constituting fraud have adequately been set forth. *See Midwest Grinding, Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.1992). When alleging fraud in a complaint, it is only necessary to set forth the basic outline of fraud and to indicate who made the misrepresentations and the time and place the misrepresentations were made. *Vicom v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994) (quoting *Bankers Trust Co. v. Old World Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992)) (Rule 9(b) requires the plaintiff to state: "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990) (Rule 9(b) "particularity" means "the who, what, when, where, and how: the first paragraph of any newspaper story"); *see also In re Janikowski*, 60 B.R. 784, 790 (Bankr.N.D.Ill. 1986) (Schmetterer, J.) (and cases cited). However, mere conclusory allegations without a description of the underlying fraudulent conduct will not satisfy the requirements of Rule 9(b) and may warrant dismissal. *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir.1990).

Skeletal pleading "upon information and belief" is permissible as to matters peculiarly within an adverse party's knowledge. *See Leatherman v. Tarrant Cty. Narcotics Intel. and Coord. Unit*, — U.S. —, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, allegations of fraud upon information and belief will not satisfy Rule 9(b) specificity requirements unless accompanied by a statement of facts on which the belief is founded. *Duane v. Altenburg*, 297 F.2d 515, 518 (7th Cir.1962); *In re Potter*, 88 B.R. 843, 847 (Bankr.N.D.Ill.1988) (Ginsberg, J.). Although courts have taken a more liberal approach in applying Rule 9(b) as to matters peculiarly within an adverse party's knowledge, simply stating the technical elements of fraud will not suffice. *Potter*, 88 B.R. at 847.

### Count I: Section 523(a)(4)

In Count I, the Attorney General asserts that Volpert incurred certain debts owed MOMG shareholders by (1) fraud or defalcation while acting in a fiduciary capacity and (2) embezzlement. He contends the debts should therefore be deemed non-dischargeable under 11 U.S.C. § 523(a)(4).[4]

### Fraud or Defalcation While Acting in a Fiduciary Capacity

To establish fraud or defalcation under § 523(a)(4), a plaintiff must show: (1) existence of an express trust or fiduciary relations of "inequality that justify the imposition on the fiduciary of a special duty, basically to treat his principal's affairs with all the solicitude that he would accord his own affairs," *Dept. of Lottery v. Marchiando*, 13 F.3d 1111, 1116 (7th Cir.1994); (2) the debt was caused by the debtor's fraud or defalcation; and (3) the debtor acted as fiduciary to the plaintiff at the time the debt was created. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987); *In re Pawlinski*, 170 B.R. 380, 388 (Bankr.N.D.Ill.1994) (Schmetterer, J.) (and cases cited).

---

after the first date set for the first meeting of creditors) has long passed.

4. Section 523(a)(4) of the Bankruptcy Code provides:

 (a) A discharge under section 727, 1141, 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

11 U.S.C. § 523(a)(4).

When determining whether a particular debtor was acting in a fiduciary capacity for § 523(a)(4) purposes, courts must first look to federal law. *See, e.g., In re Blumberg,* 112 B.R. 236, 240 (Bankr.N.D.Ill. 1990) (Schmetterer, J.). The traditional non-bankruptcy definition of a "fiduciary" relationship—a relationship involving confidence, trust, and good faith—is "far too broad" and therefore not applicable in bankruptcy. *Illinois Dept. of Lottery v. Marchiando,* 142 B.R. 246, 249 (N.D.Ill.1992), *aff'd,* 13 F.3d 1111 (7th Cir.1994). The fiduciary relationship referred to in § 523(a)(4) is limited to express and technical trusts existing prior to the act creating the debt and without reference to that act. *Id.* Courts may, however, consider state law relevant in determining whether a debtor acting as a fiduciary under bankruptcy law. *Blumberg,* 112 B.R. at 240. "The state law creating the fiduciary relationship must, however, have imposed a trust on the property and set forth the fiduciary duties." *Marchiando,* 142 B.R. at 249.

With respect to the first and third elements of the test for fraud or defalcation outlined above, the State pleads that Volpert served as an officer and director of MOMG and thus "owe[d] a fiduciary duty to the Corporation not to use corporate assets for personal gain." Volpert argues, however, that the "bare allegation" that he was an officer and director is not enough alone to plead fiduciary capacity because officers are not per se fiduciaries "by mere reason of office." His argument is without merit.

A Seventh Circuit panel recently suggested that a corporate director, by mere status of office, owes a fiduciary duty to shareholders for § 523(a)(4) purposes. *See Marchiando,* 13 F.3d at 115–16. Under Illinois law (applicable here since MOMG was an Illinois corporation), an officer does owe a fiduciary duty to the corporation's shareholders. *Zokoych v. Spalding,* 36 Ill.App.3d 654, 344 N.E.2d 805 (1976); *Hagshenas v. Gaylord,* 199 Ill.App.3d 60, 145 Ill.Dec. 546, 557 N.E.2d 316 (1990). The State's assertions (1) that this suit is brought on behalf of certain MOMG shareholders, and (2) that Volpert was both an officer and director of MOMG,

were enough to plead fiduciary capacity under federal notice pleading requirements.

The State has failed, however, to plead sufficiently the second element of the test for non-dischargeability under § 523(a)(4)—that the underlying debts were incurred by Volpert's fraud or defalcation. *See Klingman,* 831 F.2d at 1295. The Attorney General adequately pleads the circumstances constituting the asserted securities fraud by MOMG. He alleges that MOMG, "by and through its officers, agents, and affiliates circulated preliminary prospectus [sic] dated January 20, 1989 and July 1, 1989 to Illinois residents." He further cites to particular sections of the prospectuses and specifies how those sections allegedly constitute fraud under Illinois Securities Law. The Attorney General does plead that two subject prospectuses "were given to Illinois Residents prior to or at the time of the sale of stock of MOMG." He does not allege, however, that the investors somehow relied on the prospectuses or the allegedly fraudulent statements contained therein. He also fails to explain what losses were thereby incurred or how those losses were incurred. The State fails, therefore, to show that these allegedly fraudulent acts somehow gave rise to debts due to the shareholders.

The State also pleads that Volpert owed a fiduciary duty "not to use corporate assets for personal gain," and implies that he somehow breached that duty. The Attorney General concludes, without more, that breach of that duty worked an apparent fraud on MOMG's shareholders. The State omits, however, to plead how such a breach constitutes fraud for § 523(a)(4) purposes. For example, the State fails to allege how Volpert used the sale proceeds for personal gain other than to suggest generally that Volpert "benefited" directly or indirectly from the Public Offering. Without more, the State has thus far failed to satisfy the requirement of § 523(a)(4) and Rule 9(b) that it plead with sufficient "particularity" the circumstances constituting fraud or defalcation while in a fiduciary capacity.

## Embezzlement

■ The State further alleges that the "fraudulent" acts complained of constitute embezzlement under § 523(a)(4) of the Bankruptcy Code. The Attorney General pleaded the *circumstances surrounding the alleged embezzlement* by MOMG. He alleges that MOMG promised in its prospectuses "that all subscribers' funds would be promptly returned" if at least two million shares were not sold within ninety days of the date each prospectus was issued. He further pleads that only 369,000 plus 517,927 shares were sold, respectively, in the relevant time frames and that "MOMG did not return all funds to subscribers." The Attorney General fails, however, to plead that Volpert never intended to keep the promise or that he somehow personally embezzled the funds. Rather, on information and belief, the State alleges that MOMG issued, offered, and sold securities in its Public Offering "for the direct or indirect benefit of defendant [Volpert]." It does not specify how Volpert actually used the proceeds for his personal gain. Moreover, Plaintiff does not attack MOMG's corporate formalities to allege that MOMG was a mere "alter ego" of Volpert or that Volpert actually took and pocketed the proceeds of securities sales. Although Volpert listed MOMG as his alias in his Chapter 7 petition, that document has not been pleaded as part of this proceeding. There may well be a potentially viable legal theory on which the State might proceed, but without more MOMG's alleged wrong cannot be attributed to Volpert. Volpert's Motion to Dismiss Count I is therefore granted for failure to state a cause of action under § 523(a)(4), but without prejudice to the State filing an amended Count I.

## Count II: Section 523(a)(2)

■ In Count II, the Attorney General alleges that Volpert incurred certain debts owed to MOMG shareholders "fraudulently *under false pretenses, false representations,* and through the use of false and misleading written materials." He concludes that such debts should therefore be deemed non-dischargeable under 11 U.S.C. § 523(a)(2). The Attorney General does not specify whether the State seeks relief under § 523(a)(2)(A) or (B) of the Bankruptcy Code. His failure to identify the precise statutory grounds for relief nevertheless does not compel dismissal under the Federal Rules. *See Bartholet*, 953 F.2d at 1078. To deal with the instant motion, *each of the two possible legal grounds must be examined* to ascertain whether the State adequately notified Volpert of the theory behind his claims and the basic facts supporting those allegations. *See Maclin*, 627 F.2d at 86. However, upon the permitted filing of amended Count II, the State is required to specify which provision(s) it relies on.

## Section 523(a)(2)(A)

■ Section 523(a)(2)(A) of the Bankruptcy Code directs that a debtor *should not be discharged from any debt obtained by false pretenses, a false representation, or actual fraud.*[5] To trigger this protection, the creditor must prove that: (1) debtor obtained property by means of a knowingly false representation or one made with reckless disregard for its truthfulness; (2) debtor actually intended to deceive; and (3) creditor actually and reasonably relied on its misrepresentation, to its detriment. *Matter of Scarlata*, 979 F.2d 521, 525 (7th Cir.1992); *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985).

■ The Attorney General alleges that Volpert obtained funds for MOMG by means of materially false statements—assertedly false and fraudulent prospectuses. He outlines the fraudulent portions of the documents in considerable detail and traces his

**5.** Section 523(a)(2)(A) of the Bankruptcy Code provides:
 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

 (2) for money, property, services, or an extension renewal, or refinancing of credit, to the extent *obtained by*—

 (A) False pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]
 11 U.S.C. § 523(a)(2)(A).

theories as to why these portions should be deemed "fraudulent." The State further alleges that Volpert knew the statements were false and that he intended to deceive investors. Conditions of the mind—for example, malice, knowledge, or intent—may be pleaded generally as peculiarly within a defendant's knowledge. *See Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1311 (N.D.Ill.1984).

The Attorney General has failed, however, to assert that the injured investors somehow relied upon the allegedly fraudulent prospectuses or the statements contained therein. Furthermore, presuming they did rely, he has failed to plead that their presumed reliance was reasonable. Also, the Attorney General has failed to plead that the shareholders were in fact injured by their presumed reliance. Finally, the State has not pleaded that defendant personally obtained and used the funds paid to MOMG. The State has thus failed to plead a proper cause of action under § 523(a)(2)(A).

### Section 523(a)(2)(B)

Section 523(a)(2)(B) [6] of the Bankruptcy Code directs that a debtor not be discharged from any debt obtained by use of (1) materially false written statements, (2) respecting the debtor's condition, (3) on which the creditor actually and reasonably relied, (4) that the debtor caused to be made with the intent to deceive. *In re Harasymiw,* 895 F.2d 1170, 1172 (7th Cir.1990).

The Attorney General has sufficiently alleged that the prospectuses dated January 20, 1989, and July 1, 1989, were materially false. He has also adequately pleaded that Volpert had the specific intent to deceive MOMG's shareholders. *See Caliber Partners,* 583 F.Supp. at 1311. However, he has again failed to allege that MOMG's shareholders actually relied on statements in the prospectuses or that their reliance was reasonable. The State has further failed to allege that the statements contained in the allegedly fraudulent prospectuses pertain to Volpert's—not MOMG's—financial condition. Again, although Volpert listed MOMG as an alias in his bankruptcy schedules, his petition has not been pleaded as part of this proceeding. The State names "Volpert d/b/a MIND OVER MATTER GAMES" in its pending Complaint, but fails to plead the nature of their relationship. Without more, the State's Complaint fails to suggest that MOMG was a mere "alter ego" of Volpert or that any statement about the Corporation's financial condition was constructively a statement about Volpert's financial condition.

The Attorney General has not pleaded a cause of action sufficient to entitle the State to offer further evidence in support of its § 523(a)(2) claim. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1685. Volpert's Motion to Dismiss Count II is therefore granted for failure to state a cause of action under either § 523(a)(2)(A) or (B), without prejudice to the State filing an amended Count II.

### Count III: Claim on Behalf of Rebeck

In Count III, the State asserts that a debt allegedly owed Paulette Rebeck should be deemed non-dischargeable under 11 U.S.C. § 523(a). Rebeck allegedly purchased 40,000 shares of stock in MOMG's Public Offering, but was mistakenly left off the list of shareholders entitled to recision offers in Exhibits B through G of the Stipulation. Therefore, on December 12, 1991, MOMG, acting by and through Volpert, entered into a separate agreement with Rebeck to redeem her shares within thirty days for $2,420.00. However, the State asserts that

---

**6.** Section 523(a)(2)(B) further provides:
(a) A discharge under sections 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(B) use of a statement in writing—

(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive[.]
11 U.S.C. § 523(a)(2)(B).

neither MOMG nor Volpert redeemed the shares as agreed.

The State has failed to plead which precise subsection of § 523(a) bars discharge of Rebeck's claim. Again, however, failure to identify the precise statutory grounds for relief does not compel dismissal under the Federal Rules. *See Bartholet,* 953 F.2d at 1078. Subsections (2), (4), and (6) of § 523(a) appear to be the only possible provisions under which the State could bring this Count. The State's pleading in Count III is nonetheless inadequate. The Attorney General merely alleges that Rebeck had an agreement with MOMG and that neither MOMG nor Volpert repurchased her shares in accordance with the agreement. He fails to offer any reason why this alleged debt should be deemed non-dischargeable. He incorporates Counts I and II by reference, but both counts are insufficient in-and-of-themselves and have been dismissed. Count III is also dismissed, but without prejudice to the State filing an amended claim.

### Count IV: Section 523(a)(6)

In Count IV, the State further contends that the acts complained of in Counts I and II, without more, were "willful" and "malicious." The Attorney General concludes that debts owed MOMG shareholders should therefore be deemed non-dischargeable under § 523(a)(6) of the Bankruptcy Code. Section 523(a)(6) provides that a debtor should not be discharged from any debt incurred by "willful and malicious injury."[7] "Willful" conduct under § 523(a)(6) is "deliberate or intentional" conduct. *In re Iaquin-*

---

7. Section 523(a)(6) provides:

 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

 . . . . .

 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]
 11 U.S.C. § 523(a)(6).

8. The State has again failed to plead the precise statutory grounds upon which it seeks relief. Such failure, however, is not fatal to the State's claim. *See Bartholet,* 953 F.2d at 1078. It seems clear from the pleadings the State intended to proceed under § 727(a)(2)(A) of the Bank-

---

ta, 98 B.R. 919, 924 (Bankr.N.D.Ill.1989) (Squires, J.) (quoting *In re Condict,* 71 B.R. 485, 487 (N.D.Ill.1987)). To establish that an alleged injury was "willful," the creditor must show that a debtor knew his or her acts would automatically or necessarily cause plaintiff's injury. *In re Scarlata,* 979 F.2d 521, 526 (7th Cir.1992).

In the case at bar, the Attorney General has failed to plead that Volpert in some way acted willfully or maliciously. He has not alleged that Volpert knew his allegedly false statements would "automatically" or "necessarily" cause the shareholders injury or alleged facts from which the same may be inferred. Without more, Count IV is insufficient on its face. Volpert's Motion to Dismiss Count IV is therefore granted, without prejudice to the possible refiling of an amended Count IV.

### Count V: Section 727(a)(2)

In Count V, the Attorney General alleges that "upon information and belief the debtor transferred the patents, copyrights, and/or licenses to certain games, for a fraction of their actual value, within one year of the petition date." Without more, he concludes Volpert should be denied a discharge under 11 U.S.C. § 727(a)(2).[8] In order to object to discharge under § 727(a)(2)(A), the objecting party must allege and ultimately prove that debtor: (1) transferred, destroyed, or concealed property; (2) belonging to the debtor; (3) within one year of filing bankruptcy; (4) with the intent to hinder, delay or defraud a creditor or officer of the estate.[9] *In re Bailey,* 145 B.R. 919, 926

---

ruptcy Code. Upon repleading, the provision relied on should be specified.

9. Section 727(a)(2) of the Bankruptcy Code expressly provides:

 (a) The court shall grant the debtor a discharge, unless—

 . . . . .

 (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred ...—
 (A) property of the debtor, within one year before the date of the filing of the petition; or

(Bankr.N.D.Ill.1992) (Ginsberg, J.); *see also In re Schroff,* 156 B.R. 250, 253 (Bankr. W.D.Mo.1993).

 Contrary to Volpert's arguments, pleading "on information and belief" can satisfy the liberal federal "notice" pleading requirements. *See Bark v. Emsco VIII, Ltd.,* 1994 WL 280077 (N.D.Ill.). Nevertheless, the pleadings contained in Count V are insufficient. The Attorney General does allege that Volpert transferred patents, copyrights, and/or licenses concerning certain games within one year of his bankruptcy filing. He further pleads that Volpert had the requisite intent to defraud creditors when he allegedly transferred these assets "for a fraction of their actual value." Fraudulent intent may indeed be presumed when a debtor gratuitously conveys valuable property to another. *See In re Armstrong,* 931 F.2d 1233, 1239, *reh'g denied* (8th Cir.1991); *Schroff,* 156 B.R. at 254. The State fails, however, to allege that these assets somehow belonged to Volpert personally so as to meet the burden to show that the Chapter 7 Trustee or creditors of this estate were deprived of assets. It is altogether unclear from the pleadings whether Volpert held the assets himself or whether MOMG held the assets as Volpert's "alter ego." Volpert's Motion to Dismiss Count V is therefore granted, but without prejudice to the State filing an amended claim.

### Count VI: Section 727(a)(5)

 In Count VI, the Attorney General asserts that Volpert is not entitled to a discharge because he failed to explain satisfactorily a loss of assets or deficiency of assets to meet his liabilities. Such failure, the State argues, should bar discharge under 11 U.S.C. § 727(a)(5). Under § 727(a)(5), the debtor obtains a discharge unless "the debtor [fails] to explain satisfactorily ... any

loss of assets or deficiency of assets to meet the debtor's liabilities".[10] The objecting party has the initial burden of identifying the assets in question by appropriate allegations in the complaint showing that the debtor at one time had the assets that would belong to the bankruptcy estate, but that those assets are no longer available to creditors. *See Potter,* 88 B.R. at 849. Once plaintiff has presented at trial some evidence of the disappearance of substantial assets, the burden then shifts to the debtor to explain the losses or deficiencies. *Id.; In re Martin,* 141 B.R. 986, 999 (Bankr.N.D.Ill.1992) (Schmetterer, J.). Whether a debtor satisfactorily explains a loss of assets is a question of fact. *In re Chalik,* 748 F.2d 616, 619 (11th Cir.1984); *see also In re Martin,* 698 F.2d 883, 885–86 (7th Cir.1983).

 The Attorney General alleges, in connection with MOMG's allegedly fraudulent public offering, that well over $340,-000.00 was invested in the Corporation by persons purchasing securities. He contends that Volpert failed to explain satisfactorily, either at the § 341 meeting of creditors or subsequently, "where and how these monies were spent." Under federal "notice" pleading standards, the State was under no further duty to allege the specific dates and transactions at issue.

Nevertheless, the State has not alleged that Volpert and MOMG should be treated as a single entity for purposes of this Adversary Proceeding. Did Volpert walk off with the corporate monies? If so, were those monies his because he and the corporation were one (and thus the monies should be accounted for) or were they corporate monies not part of his bankruptcy estate? One cannot tell from the State's pleading.

In its Memo in Support of the pending Motion to Dismiss, the State argued that

---

(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

**10.** Section 727(a)(5) provides:
(a) The court shall grant the debtor a discharge, unless—

(5) the debtor has failed to explain satisfactorily, before determination of denial of dis-

charge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C. § 727(a)(5).

"the complaint alleges Volpert was president and chairman of the board of Mind Over Matter, Inc. and was, in fact, the corporation. The corporation was Volpert. Volpert's assets were those of the corporation." Such argument in a brief does not a pleading make. No such allegations are found anywhere in the State's Amended Complaint. Without more, Volpert's motion to Dismiss Count VI is therefore granted, without prejudice, with leave for the State to file an amended claim.

### Count VII: Section 727(a)(3)

 Finally, in Count VII, the State asserts that Volpert should be denied a discharge under 11 U.S.C. § 727(a)(3).[11] Under § 727(a)(3), the State must allege and ultimately prove that Volpert concealed, destroyed, mutilated, falsified, or otherwise failed to keep "adequate" business records. *See Martin,* 141 B.R. at 995; *Bailey,* 145 B.R. at 924. Intent to defraud is not an element of this objection to discharge. *Potter,* 88 B.R. at 848. "Records are not 'adequate' if they do not provide the trustee or creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Martin,* 141 B.R. at 995 (citations omitted). The completeness and accuracy of a debtor's records are to be determined on a case-by-case basis, considering *inter alia* the size and complexity of the debtor's business, the debtor's sophistication, experience, and business acumen. *Bailey,* 145 B.R. at 924; *In re Calisoff,* 92 B.R. 346, 356 (Bankr.N.D.Ill.1988) (Barliant, J.).

 Because intent to defraud is not an element of § 727(a)(3), the State need only meet the less precise pleading requirements of Fed.R.Civ.P. 8(a) (Fed.R.Bankr.P. 7008). The State pleads, upon information and belief, that Volpert "concealed, destroyed, mutilated, falsified, or failed to keep

or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained." Although Count VII merely "parrots" the text of § 727(a)(3), pleading "upon information and belief" is sufficient where fraud is not alleged, so long as the matter is not actually or constructively within the pleader's personal knowledge. While Count VII may have been "thrown in as an afterthought to cover all bases," as Volpert suggests, the State has given Volpert adequate notice of its claim, thus permitting him to file an answer. Presumably, the requirement of Fed. R.Bankr.P. 9011 that allegations be based on "reasonable inquiry" ensures that the State has some basis for pleading on information and belief and that the lawyer signing the pleading is not asserting mere guesswork. It should be noted, however, that, as Count VII now stands, the State will be permitted to put on evidence pertaining to the adequacy of Volpert's—not MOMG's—financial records. The State has thus far not pleaded a relationship between the debtor and MOMG sufficient to justify treating the two parties as the same entity for purposes of this Adversary Proceeding. While the Motion to Dismiss this Count is denied, the State has leave to amend it along with the other counts if the intent is to charge Volpert with loss of MOMG records.

### CONCLUSION

For the foregoing reasons, Volpert's Motion is granted in part and denied in part. Volpert's Motion to Dismiss the entire case for lack of standing is dismissed with prejudice. By separate order, the Debtor's Motion to dismiss Counts I, II, III, IV, V, and VI is allowed without prejudice and with leave to amend those counts. The Motion as to Count VII is denied, but with leave to amend it. Debtor will be ordered to Answer

---

11. Section 727(a)(3) expressly provides:
 (a) the court shall grant the debtor a discharge unless—

 . . . . .

 (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books,

documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.
 11 U.S.C. § 727(a)(3).

the counts after an amended Complaint is filed.